JOY NEWBURGER et al., v. SYLVAN NEWBURGER et al.

Western Section.    February 5, 1932.

Petition for Certiorari denied by Supreme Court, April 9, 1932.

Canada, Williams & Russell and C. P. J. Mooney, all of Memphis, for appellant.

Holmes, Canale, Loch & Glankler, of Memphis, for appellee.

OWEN, J. The complainants Joy and Mary Newburger, minor daughters of Joseph Newburger, deceased, filed a bill against certain hereinafter named defendants, in the Chancery Court of Shelby County, Tennessee.

Mrs. Hettye C. Arrington, the first wife of Joseph Newburger and the mother of the two complainants, was complainant as next friend of said two minor children.

The defendants were Sylvan Newburger, Samuel Newburger, David Levy and R. L. Taylor, executors and trustees of the estate of Joseph Newburger, Mrs. Rose C. Newburger, the widow of Joseph Newburger, and Alma Cohn, guardian of said two minor complainants under the last will and testament of Joseph Newburger.

The bill sought to have said executors and trustees to pay out of the estate of Joseph Newburger a sufficient sum for the proper maintenance, care, support and education of said two minor complainants.

The defendants denied liability under the terms of Joseph Newburger's will. The Chancellor sustained complainants' bill, and directed the defendants, as executors and trustees to pay for the support of the complainants, Joy and Mary Newburger, on the first day of each month, the sum of $125 each, per month. The sum was ordered paid from the 12th day of May, 1930, the date of the filing of complainants' bill herein, and the defendants were ordered to pay the sum of $250 on the first day of every month, one-half to each

complainant, to the Clerk and Master of the Chancery Court of Shelby County. The Clerk and Master was authorized to turn the sum paid to him each month, to Hettye C. Arrington, the mother of said children.

The court further ordered a reference, for the Clerk and Master to report what amount would be a proper fee for solicitors for the complainant. It was further ordered that a reference to the Clerk and Master be ordered, and he was to report and determine as follows:

1. The amount necessary for the permanent reasonable support, education and maintenance of the complainant minor children, Joy and Mary Newburger, taking into consideration their need as they grow older, in accordance with their condition and station in life, and what amount it would be necessary to provide in order to secure the payment of that support during their life times.

2. The value, character and condition of the estate of Joseph Newburger when same was received and taken into possession by said executors and trustees, the value, character and condition of same at this time, and the gross income therefrom.

3. The expenditures from said estate as made by said executors and trustees, and the character of same and the purpose thereof.

4. What amounts have been expended by the mother of said children since they have been under her custody and control for their reasonable and necessary support, education and maintenance.

5. What debts or obligations have been incurred on behalf of said children for their reasonable support, education and maintenance, which have not been paid.

And that the Clerk and Master will hear proof and determine all of the aforesaid matters above referred to him and report to the court thereon.

The executors and trustees were enjoined from making any distribution from the estate of said Joseph Newburger, except the payment of $250 per month to the complainants, until further orders of the court.

We quote from the decree as follows:

To the action of the court in decreeing that there is a valid and subsisting contract binding upon the estate of Joseph Newburger for the support, education and maintenance of the complainants, Joy and Mary Newburger, and in further holding that said contract has not been breached, but is now in full force and effect; and in decreeing that the complainants are not required to elect as to whether they take under the will or under the contract; and in decreeing that they may take under both the contract and the will; and in decreeing that they are entitled to a temporary allowance from the

filing of the bill and until the coming in of the report, of a sum from the estate of their father; and to the action of the court in decreeing that the executors and trustees pay to the solicitors for said complainants a reasonable compensation for services rendered on behalf of the complainants; and the further action of the court in ordering a reference for the purposes set out above; and to the order restraining any distribution by the trustees from the estate of Joseph Newburger, except as herein ordered and under the further orders of the court and the decreeing that the rights of the complainants under the contract are prior and superior to and take precedence over the terms and provisions of the will of the said Joseph Newburger otherwise disposing of his estate; and to the order compelling the executors and trustees to file herein a full and complete report within sixty days as to the character and extent and value of the estate, and other matters, as provided above, the defendants excepted and prayed an appeal to the next term of the Court of Appeals, sitting at Jackson, Tennessee.

The defendants did not except to the findings of the court to the effect that the sum of $250 is a reasonable temporary allowance for the support and maintenance of the minor complainants, only excepting to their rights to any allowance by the court. The defendants perfected their appeal, and have assigned twenty-seven errors. These assignments will be disposed of in groups. Group No. 1, which embraces assignments 1, 2, 7 inclusive, 9, 10, 11 and 23, insists that the contract between Newburger and his first wife, the mother of the children, could not be enforced, that it was too vague and indefinite, that this suit is in the nature of a suit for specific performance, and equity will not decree a specific performance of a contract unless its terms can be clearly made out in all of its essential particulars; that the contract sought to be enforced is too indefinite to be enforcible; that the contract is one without consideration; that Newburger had the right, by will, to dispose of his property as he pleased, even though he disinherited his children.

Group No. 2 embraces assignments 5, 8, 12 and 26 wherein it is insisted that the complainants should be estopped from having their bill sustained, for the reason that Mrs. Rose Newburger did not dissent from her husband's will. These complainants, by waiting to institute suit at the date their bill was filed, had prevented Mrs. Newburger, the widow, from dissenting from her husband's will and thus caused her to lose her dower interest in her husband's estate.

Group No. 3 embraces assignments 21 and 22 wherein it is insisted that the court erred in ordering a reference and in enjoining the defendants from paying out any funds.

Assignment No. 27 complains of the action of the court in directing the executors and trustees to pay to the minor complainants the

sum of $250 monthly, pending the appeal and pending the reference to the Clerk and Master.

All of the assignments are embraced within these four groups.

Briefly stated, it appears that Joseph Newburger married the mother of the two minor complainants during the year 1907, and lived together until the 28th day of July, 1922, on which date Hettye C. Arrington was granted an absolute divorce. On September 21, 1922, Hettye C. Newburger was married to Wm. T. Arrington.

It appears that the complainant, Joy Newburger, was born June 21, 1916, and on March 15, 1919, Mary Newburger was born. On the day the divorce decree was entered, a contract or agreement as to property rights and as to the custody of the children, was agreed to by complainant and defendant, and in this agreement, the custody of the two children was granted to Joseph Newburger for a period of ten months per year and to the mother for two months. The father, during the ten months, was to have the exclusive care, management, education and control of the two children; the mother was not to interfere with the children, but she could visit them at reasonable times, or in the event of illness or emergency, she could see them at any time.

In this decree, the defendant made a property settlement of $300,-000 on the complainant, the greater portion of which sum the deceased was to pay, by notes, which he executed.

On February 3, 1923, Joseph Newburger and his divorced wife, who at that time had married Wm. T. Arrington, signed a new agreement in regard to the alimony and the care and custody of the children. This last agreement was also made the decree of the court in the divorce proceedings, or the original cause for divorce. In both of these decrees, it was provided that the cause should be retained in the court insofar as it pertained to the custody, care, maintenance and education of said children.

On the 6th day of March, 1923, Joseph Newburger married the defendant, Mrs. Rose Newburger, and they lived together as husband and wife in the Newburger home in Memphis, until December 17, 1926. Said children lived with their father until his death, which occurred December 17, 1926, and after the death of their father, the two minor complainants continued to live with Joseph Newburger's widow until the 22nd day of May, 1929.

It appears that the defendant, Alma Cohn, who was appointed guardian of said two minors, by the will of said Joseph Newburger, and wherein he provided for the guardian, who was Newburger's sister, to be paid the sum of $500 per month for her services in being guardian for said two children. The guardian consented for the two minor children to live with Joseph Newburger's widow after

the death of their father. Mrs. Arrington, the mother of said children, filed a petition to regain the custody of her two daughters May 22, 1929. This petition was vigorously resisted by the executors and trustees and by the testamentary guardian. This litigation "granting the custody of the children to their natural mother," was affirmed by this court, and petition for certiorari denied by Supreme Court, April 5, 1930. The case is reported in 10th Appeal Reports, page 555.

It appears that the children have been under the exclusive care and custody of their mother since May the 22nd, 1929, and since said date, the executors and trustees have paid nothing to Mrs. Arrington towards the maintenance and support of said children. The bill in this cause was filed May 12, 1930. The bill alleged that complainants' father, Joseph Newburger, had entered into a binding contract during his lifetime, and that this contract was binding upon his estate after his death, to provide suitable means for the support, education and maintenance of said children.

The defendants demanded a jury, which demand was withdrawn on the day of the trial, and by consent the cause was heard on oral proof, in open court, by the Chancellor sitting without the intervention of a jury.

We quote from the Chancellor's opinion, the substance of which is embodied in the decree as follows:—

"By the supplemental contract of February 3, 1923, which was also embodied in and made a part of a decree of the court, the former decree was modified so as to give Mr. Newburger the exclusive custody of the children, except that ample provision was made for Mrs. Arrington to see them at pleasure in the daytime; and he further agreed that he would by his will appoint some suitable person to have control of the care, custody, maintenance, education and rearing of said children after his death, and he agreed to nominate and appoint his sister, Mrs. Alma Cohn as such guardian and custodian of the persons of said children, making in the same way suitable provision for their maintenance, care, education and support, to the extent that they may be fully and amply provided for in these respects; and it was again provided in the decree that the court should retain jurisdiction of the cause with reference to the custody of said children."

"By his will written some years later, and shortly before his death, direction was first made for the payment of his debts and funeral expenses, inheritance taxes, expenses of administration. and the payment of specific bequests to the amount of about $63,000; it was then provided that his home place on the East Parkway and its furnishings should be used and occupied by the widow and the two children as long as it was practicable or advisable for them to occupy it as a

residence; but the executors and trustees were authorized to sell this place and the furnishings whenever it became advisable to do so; and upon such sale being made, to pay one-third of the proceeds thereof to the widow, and hold the remaining two-thirds in trust for the use and benefit of the children.

"The trustees were then directed to hold one-eighth of the residue of said estate in trust and pay the income therefrom to the two sisters of the testator; and one-third of the remaining seven-eighths of the residue is given to his widow, and until the time when same is to be paid over to her she is to receive the income therefrom.

"It is then provided that two-thirds of the remaining seven-eighths of said residue shall be held in trust for the benefit of the two daughters, Joy and Mary, to the extent of one-half for each until they attain the age of twenty-eight years; and this is made the main and principal trust of the corpus of my estate, and is to be held for the use, benefit and enjoyment of my said daughters."

It is further provided:

"The trustees are further authorized, empowered and directed to see that at all times ample is provided for the maintenance, support, education and pleasure of my said respective daughters, using the entire income of their respective shares therefor, if they shall deem it advisable or proper; and I do further authorize and empower them if in their judgment they deem it necessary, to encroach upon the corpus of the share of each beneficiary to meet her needs and requirements; it being my wish and desire that my daughters be supported, educated and maintained wholly from my estate and in a manner to which they have been accustomed in my lifetime."

The testator, in emphatic language, however, directed that no part of the income from his estate should be paid to Mrs. Arrington, the mother of said children, for any purposes whatever, either for board. services or education; and the trustees under his will were directed to resist to the very utmost any attempt on the part of Mrs. Arrington to regain the custody of said children; the language of the will with respect to these matters is as follows.

"No part of said income of the said property shall directly or indirectly be paid to the mother of said children, now Mrs. Hettye C. Arrington, for any purposes whatsoever, either for support or services; or board, or maintenance or education. Nor shall any of said funds be so used for support and maintenance of either of my said children during the existence of said trust, while they are living in her house, or visiting with her; and no receipt or acquittance from their said mother for any moneys paid out or disbursed by the trustees for them shall be an acquittance of them to the said beneficiary."

And again:

"I have already provided, and I intend to make it plain, that all payments for support, maintenance, education, and all income to either of my said daughters, shall stop at any time they are living with, under the roof of, or visiting with their said mother, to be resumed when they no longer do so. This provision for stopping the payments shall, of course, not apply to visits made by her to them at reasonable times or intervals under the provisions of the decree with reference to said children, as it now exists."

And again, with reference to custody, it is provided:

"In the event their mother, the present Mrs. Arrington, should ever attempt to have control or custody of my two daughters, or to break the provisions of my will as to that, either directly or indirectly, I instruct my executors and my trustees, and persons herein named, to resist such an attempt to the extent of their ability; and to do so at the expense of the trust fund herein given for the benefit of said children, it being especially provided that their expenses and necessary and proper lawyers' fees shall be a charge upon said fund, and shall be paid therefrom. I especially direct my friend, R. L. Taylor, to give his attention to, and control said litigation, to the end that my will with reference thereto, and the provisions I have made therefor, shall not be broken nor set aside."

The present bill is filed by the children, by their mother as next friend, against the executors and trustees, to require them to make provision for their permanent support, maintenance, and education out of the estate of their father, as well as a temporary allowance for their support, maintenance and education pending the hearing, and to reimburse their mother for the sums advanced by her for their necessary support and maintenance during the time they have been residing with her; and also for the reasonable compensation of their solicitors for services rendered and to be rendered in their behalf.

They also ask that their right to support, maintenance and education under said original and supplemental contracts, made in their behalf and for their benefit, be adjudicated and decreed; and that a sum adequate to provide an income sufficient for their ample support, maintenance and education to set apart by said trustees for their benefit; that their rights under said contract be decreed to be superior to the claims of the specific legatees for their bequests.

It is conceded by the defendants that the complainants have the right to prosecute this suit in their own names, by next friend; and that any rights which they may have under said contract to an allow-

ance of funds for their support, maintenance and education out of the estate of the testator, are superior to the claims of the specific legatees; but it is most earnestly insisted that the obligation of the testator under said contracts to provide for the support, maintenance and education of said children was conditional upon their remaining under his exclusive custody and control during his lifetime, and under the custody and control of the guardian designated by him in his will, after his death; that this condition of the contracts was breached when the mother was given the custody of the children, and that when they went to live with her all their rights to support and maintenance out of his estate were forfeited and lost.

The complainants are not parties to these contracts, although the provisions thereof with reference to the care, custody, maintenance and education of complainants, were for their benefit. One of the stated purposes of the original contract was ''that the very best interests of their said children may be conserved.''

At that time, when the parents were about to be divorced, it doubtless appeared to them that the provision then made for the protection of the children was the most satisfactory that could be made, under all the existing circumstances; but thereafter, when Mrs. Newburger had re-married, and planned to move to Cuba to live, it seemed to the parents that the contract as originally made should be modified, and the supplemental contract was entered into. Both of these contracts received the sanction of the court at the time; but the right was reserved by the court to modify them in respect to the custody of the children whenever it appeared to be necessary for their happiness and welfare.

The provision then made for their care and custody was satisfactory so long as the father lived; but after his death and under changed conditions, they were unhappy and longed to be with their mother; and upon application to this court the decree with reference to their custody was modified so as to give them into the custody of the mother; the result seem to have justified this action of the court, for the undisputed proof is that during the two years they have been with their mother, she has given them every attention, and they have been very happy with her.

This was not a breach of the supplemental contract in which Mr. Newburger agreed to make ''suitable provision for their (the children's) maintenance, care, education and support, to the extent that they may be fully and amply provided for in these respects.'' The complainants are the wards of the court and the provision in the contract for their support, maintenance and education in no way conditioned upon the court's leaving them with the testamentary guardian under any and all circumstances; on the contrary, the con-

sent decree entered February 12, 1923, as well as the original decree for divorce, expressly provided that the court should retain jurisdiction at all times for the purposes of custody of the children. There is nothing in the contract which requires that the provision for the support, maintenance and education of the children should cease if the court saw fit to exercise this jurisdiction which the parties agreed that it should exercise if the happiness and welfare of the children demanded it.

The testator by his solemn contract, agreed to provide for the support, maintenance and education of his children not only during his lifetime but out of his estate after his death. The contract is valid and binding, and to the extent that the will is in conflict with it, the will must fail.

Counsel asks the question whether the complainants are electing to take under the contract or under the will. They have the right to take under both; the election to claim the benefit of the provisions of the contracts for their support, maintenance and education in no way deprives them of the provisions made for their benefit in the will.

The mother of the complainants has provided for their support, maintenance and education for the past two years since they were given into her custody; her estate is now depleted to such an extent that she is no longer able to carry this burden.

Under these circumstances I am of opinion that the complainants are entitled to have a reasonable allowance for their care, support, maintenance and education out of the income from the trust funds created for their benefit under the will of their father; and until these trust funds are set up for their benefit by the trustees, a decree may be entered directing the trustees to pay to their mother the sum of $250 per month, from the filing of the bill in this cause, for their support, maintenance and education; this decree may also provide for the reasonable compensation of their solicitors for services rendered in their behalf and for their benefit; and for this purpose a reference will be ordered. Complainants may also have a reference for an accounting with the trustees, if necessary; and the trustees will not pay the specific legacies, or make any distribution of the corpus of the estate, except under order of the court.

The cause will be retained in court for the purpose of increasing or decreasing this allowance if the conditions require it, and either the complainants or the trustees may apply for such modification of the decree at any time.

"I do not feel warranted in ordering a special trust fund set up in an amount sufficient to provide an income for the support, main-

tenance and education of the complainants, as prayed for in the bill.''

In the former case of Newburger v. Newburger, wherein the custody of the two minor complainants was given to their mother, Mrs. Hettye C. Arrington, it was held, ''that where the father and mother separated, and it was agreed between them and decreed in the divorce decree that the father should have the custody of the minor children, and after his death a guardian named by him should be the personal guardian of said children; and after the death of the father the mother petitioned the court to transfer the custody of the children to her.''

''Under the evidence set out in the opinion, that the same justified the court in transferring the custody of the children to the mother, notwithstanding the prior agreements of the parties.''

So it appears that the court has seen fit and proper to remove these two minor complainants from being under the care, custody and control of the guardian their father had named for them, and it was for the best interest of these two minor complainants to place them in the care, custody and control of their natural mother, who as next friend is the complainant in the instant case.

The Chancellor, this court and the Supreme Court, all acting and decreeing upon the basic idea or facts as appeared in the case reported in the 10th Appeal Reports, page 555, as to what was for the best interest of the minor children. ''Since time immemorial, the Chancery Court has had jurisdiction of the property and person of minors. It had this right long before our present Constitution.''

Joseph Newburger and his divorced wife, Hettye C. Newburger, agreed in the contract they made settling property rights, ''that the cause should remain in court for the purpose of determining questions in reference to the custody of said children, and the defendant agreed in that contract, which became a decree of the court, to make, in every way, suitable provision for the maintenance, care, education and support of said children to the extent that they may be fully and amply provided for in all these respects, during his lifetime and after his death; and whereas, both the parties have made an agreement each with the other, with reference to the care, custody and control of the said children as a part of the agreement now entered into.''

We are of the opinion that these two minor complainants have such an interest, both under the contract of their father with their mother and under their father's will, that a court of equity is justified in granting the complainants relief. The contract is not too vague or indefinite to be enforced. We are of the opinion that under the contract between the father and mother of these two minor complainants, it was agreed that the father, during his lifetime and after

his death, would maintain, support and educate these two minor complainants, and that this agreement is binding upon the estate of Joseph Newburger; that Joseph Newburger, could not, by will, violate the terms of the contract that had become a decree of the Chancery Court of Shelby County. We are of the opinion that the contract to support the two minor children is of sufficient certainty and definiteness to be enforced in a court of equity. 28 R. C. L., Sec. 7; 1 Page on Wills, Sec. 92; Williams v. Buntin, 4 Tenn.. App., 340.

The court would be in an inconsistent attitude, in our opinion, to hold that it was for the manifest interest of these two minor children and for the protection of their health and to promote their happiness that they should be removed from the care and control of their testamentary guardian and placed in the care and custody of their natural mother, and then to hold that these two children are not entitled to anything from their father's estate, for their suitable maintenance and education. These two minor children are wards of the Chancery Court of Shelby County, and equity and justice will not permit the court, in one decree, to place these two minors in the care and custody of their mother and in the next breath say, to these two minor children, ''you are in the care and custody of your mother, but the court cannot aid you any further, therefore, you will have to depend upon charity or other means for your support. Your mother is not able to support you. You have property under your father's will for your maintenance and support, but the court will have to give you a stone instead of bread, a serpent instead of fish.''

A court of equity, being a court of righteousness and justice, will not place itself in such an inconsistent attitude.

We are of the opinion that the Chancellor was not in error in decreeing that these two minor complainants were entitled to the relief sought under the contract executed by their father and mother and under the will of their father.

The first group of assignments are overruled. As to the second proposition that these complainants were estopped, and that Mrs. Rose Newburger would have dissented from the will, had she known that these two complainants were going to assume the attitude that they have in this litigation.

We are of the opinion that this proposition is not sound; that Joseph Newburger and the mother of these children had made the contract, with reference to the support and maintenance of these children, prior to the marriage of Joseph Newburger and the defendant, Mrs. Rose Newburger, the widow. It was a decree of the court.

And Mrs. Newburger, the defendant, had constructive knowledge of the contents of said decree and contract. We do not find in the record any act upon the part of these complainants that misled Mrs. Rose Newburger, the widow of Joseph Newburger, or prevented her from dissenting from her husband's will if she saw fit to dissent. And the act of the two minors in being placed in the case and custody of their natural mother is not a breach of the contract between their father and their mother. Defendant's insistence on an estoppel and on a breach of contract is overruled.

We are of the opinion that it was proper for the court to order the reference that was ordered. These complainants have an interest in their father's estate, and it certainly doesn't appear what the value of the estate is. It appears that the executors and trustees had been paying sums to the widow for the past two years, but ignoring the complainants. And it is proper to ascertain the extent of Joseph Newburger's estate so that the two minor complainants can receive their proper allowance. We are of the opinion that the order of reference, touching all the matters set out in this opinion, was a proper order of reference.

We find no error in the decree of the Chancellor. All the assignments are overruled and disallowed. The decree of the lower court is affirmed. The appellants will pay the cost of the appeal, the cost of the lower court will be paid as ordered by the Chancellor. The cause will be remanded to the Chancery Court for the execution of the order of reference and for any other steps that maybe necessary to take in enforcing this decree.

Heiskell and Senter, JJ., concur.